IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ABDULLAH G. HUBBARD, ROBERT, SAUNDERS, MEL MCCALLISTER, NORMAN INGRAM, JAMES WILSON, DAVID T. SCOTT, MICHAEL BARTLEY, DAMON GIBSON, and BRYON WARNER,<br><br>            Plaintiffs,<br><br>    v.<br><br>COMMISSIONER CARL DANBERG, DEPUTY COMMISSIONER THOMAS CARROLL, ACTING WARDEN BETTY BURRIS, RON HOLSTERMAN, MIKE LITTLE, CAPTAIN MICHAEL MCCRAMER, LT. MICHAEL TRADER, SUPERVISOR LEE LEPORE, SUPERVISOR JIM MASSIE, SUPERVISOR TERRY YODER, SUPERVISOR ED BOWERS, SUPERVISOR DAN ATHERHOLT, and SGT. MARVIN CRESEY,<br><br>            Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 07-745-GMS<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM ORDER**

At Wilmington this $/\sqrt{\phantom{i}}$ day of December, 2009, having considered the plaintiffs' pending

motions (D.I. 74, 76, 79, 86, 87);

IT IS ORDERED that:

**I. Introduction**

The plaintiffs, inmates at the James T. Vaughn Correctional Center ("VCC"), formerly

known as the Delaware Correctional Center, Smyrna, Delaware, filed this lawsuit pursuant to 42

U.S.C. § 1983. (D.I. 1, 15.) They appear *pro se* and have paid the filing fee. The complaint

alleges racial discrimination in job assignments at the VCC; unconstitutional conditions of confinement for disabled inmates; improper inmate commissary account procedures; inadequate grievance procedures; and violations of the Americans with Disabilities Act. The plaintiffs seek injunctive relief.

## II. Show Cause

On December 17, 2008, the Court ordered the plaintiffs to show cause within thirty (30) days why the defendant Betty Burris ("Burris") should not be dismissed pursuant to Fed. R. Civ. P. 4(m). (D.I. 64.) The plaintiffs did not respond to the show cause order. Accordingly, the court finds that the plaintiffs have failed to show cause for their failure to serve Burris and she is **dismissed** as a defendant.

## III. Request for Counsel

The plaintiff Robert Saunders ("Saunders") requests counsel on the grounds that he is unable to hire counsel; he is physically unable to use the law library due to his protective custody housing assignment; he has major medical problems and is under the care of a physician; he has no access to a computer or typewriter (although his motion is typed); he is dependent upon his daughter for legal assistance; his medical conditions and limited law library access greatly limits his ability litigate; the issues are complex and will require significant research; and his high blood pressure has an adverse physical effect upon his sight and movement. (D.I. 74.) In support of his motion, Saunders submitted his medical records for the Court's review.

Although a plaintiff does not have a constitutional or statutory right to an attorney,[1] a

---

[1]*See Mallard v. United States District Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989) (§ 1915(d) does not authorize a federal court to require an unwilling attorney to represent an indigent civil litigant, the operative word in the statute being "request."); *Tabron v. Grace*, 6 F.3d

district court may seek legal representation by counsel for a plaintiff who demonstrates "special circumstances indicating the likelihood of substantial prejudice to [the plaintiff] resulting . . . from [the plaintiff's] probable inability without such assistance to present the facts and legal issues to the court in a complex but arguably meritorious case." *Tabron v. Grace*, 6 F.3d 147, 154 (3d Cir. 1993)(citing *Smith-Bey v. Petsock*, 741 F.2d 22, 26 (3d Cir. 1984)).

Factors to be considered by a court in deciding whether to request a lawyer to represent an indigent plaintiff include: (1) the merits of the plaintiff's claim; (2) the plaintiff's ability to present his or her case considering his or her education, literacy, experience, and the restraints placed upon him or her by incarceration; (3) the complexity of the legal issues; (4) the degree to which factual investigation is required and the plaintiff's ability to pursue such investigation; (5) the plaintiff's capacity to retain counsel on his or her own behalf; and (5) the degree to which the case turns on credibility determinations or expert testimony. *Montgomery v. Pinchak*, 294 F.3d 492, 498-99 (3d Cir. 2002); *Tabron*, 6 F.3d at 155-56.

After reviewing Saunders' motion and supporting exhibits, the Court concludes that the case is not so factually or legally complex at this juncture that requesting an attorney to represent Saunders is warranted. Saunders' filings in this case demonstrate his ability to articulate his claims and represent himself. Thus, in these circumstances, the Court will deny without prejudice to renew Saunders' Request For Counsel. (D.I. 74.)

## IV. Meet and Correspond with Co-Plaintiffs

The plaintiff Abdullah G. Hubbard ("Hubbard") moves for an order permitting the plaintiffs to meet and correspond to prepare for this case. (D.I. 76.) Hubbard indicates that he

---

147, 153 (3d Cir. 1993) (no right to counsel in a civil suit).

and Saunders are housed in protective custody, while the other plaintiffs are housed in general population. Hubbard unsuccessfully sought permission from the warden to meet and correspond with the co-plaintiffs. Hubbard contends the relief is necessary to "level the playing field," noting that the defendants are represented by counsel. In essence, Hubbard seeks injunctive relief.

The defendants object on the grounds that the proposed consultation poses a grave risk to the security of the inmates and staff at VCC, the complaint proceeds on individual claims and not as a class action, and Hubbard has not met his burden on his claim for injunctive relief. The defendants note that the plaintiffs are housed at five different security levels. Four of the inmates are housed in medium/minimum security[2], two are classified to minimum security, one inmate is classified to medium security, one inmate is classified to medium high security, and Hubbard is housed in protective custody. James Scarborough, a major/security superintendent at the VCC, states that one of the VCC's policies does not allow inmates of different classification levels to meet and mix together. (D.I. 80, Scarborough aff.) The purpose of the policy is to maintain security and control within the institution and to protect the staff and inmates.

Saunders responds that the issue was resolved in *Masjid Muhammad-DCC v. Keve*, 479 F. Supp. 1311 (D. Del. 1979) when a district judge allowed plaintiffs inmates to meet in the law library to prepare consolidated discovery requests and summary judgment motions. Saunders states that the plaintiffs signed waivers which released State and departmental officials from any

---

[2]Saunders was housed in protective custody until May 8, 2009, when he was reclassified to medium/minimum security. (D.I. 80, ¶ 8.)

responsibility and the same can be done in this case.[3] (D.I. 82.) Hubbard responds that the complaint does not contain individual or separate claims but contains universal references to the plaintiffs. (D.I. 83.) He takes exception to the defendants' security concerns noting that for the past seven to nine years, inmates at various security levels gather in general population, without risk, on a daily basis with limited supervision and minimal staffing.

Where a plaintiff requests an injunction that would require the court to interfere with the administration of a state prison, "appropriate consideration must be given to principles of federalism in determining the availability and scope of equitable relief." *Rizzo v. Goode*, 423 U.S. 362, 379 (1976). Prison officials require broad discretionary authority as the "operation of a correctional institution is at best an extraordinarily difficult undertaking." *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974). Hence, prison administrators are accorded wide-ranging deference in the adoption and execution of policies and practices that are needed to preserve internal order and to maintain institutional security. *Bell v. Wolfish*, 441 U.S. 520, 527 (1979).

The federal courts are not equipped with sufficient resources, knowledge, or expertise to act as overseers of the day-to-day management of prisons. Thus, the court will not interfere in the VCC's determination that the plaintiffs request to meet and correspond poses grave security concerns at the institution. Moreover, it is the plaintiffs' burden to prove that they are entitled to injunctive relief, and the court finds that they have not met that burden. Finally, should this case proceed to trial, the court will reconsider the issue upon the filing of a new motion. Therefore, considering the facts adduced and the appropriate legal standard, the court finds that the plaintiffs have failed to meet the first prong necessary for injunctive relief and have not demonstrated the

---

[3]The cited case does not speak to the issue.

likelihood of success on the merits. Accordingly, Hubbard's motion is **denied.** (D.I.76.)

## V. Motion for Temporary Restraining Order/Preliminary Injunction

Hubbard and Saunders contend the defendants are denying them their right to due process and equal protection and seek injunctive relief to compel the defendants to provide them physical access to the law library, legal assistance, and access to computers. (D.I. 79.) Hubbard and Saunders state that they are denied physical access to the law library; they are only given cases when they provide the case citation; they are denied physical access to various legal publications; they are not provided with a listing of publications found in the law library; employees did not provide assistance in preparing briefs or motions and do not conduct research germane to the same; they must rely upon the paging system for research which does not comply with *Bounds v. Smith*, 430 U.S. 817 (1987); and Saunders requires the use of a computer due to cataracts, glaucoma, and a protruding eye condition which causes blurred vision and difficulty in writing and reading small print.

The defendants respond that the plaintiffs have not met their burden for injunctive relief, and they are provided regular and frequent access to legal services and resources. (D.I. 81.) In support of their opposition, the defendants submitted the affidavit of Brian Engrem ("Engrem"), a paralegal at VCC. (D.I. 81, ex. A.) He states that inmates at the VCC are permitted to schedule appointments to attend the law library, and that the law library assists inmates with legal research and provides inmates with a number of services including court forms for the various courts, photocopying, notary service, and access to many research materials. (*Id.*) Inmates who choose not to attend the law library or who are not permitted to attend the law library for security reasons may use the institutional mail system to request information and documents from the law

library staff. (*Id.* at ¶ 4.) Inmates classified to maximum security or protective custody are not permitted contact with other inmates and are not permitted to attend the law library due to safety concerns. (*Id.* at ¶ 5.) However, they have full access to legal services and resources through the institutional mail process. (*Id.* at ¶ 4.) Inmates write their requests and use institutional mail to send the request to the law library. (*Id.*) Staff paralegals and inmate workers respond to an inmate's request and return the information to the inmate through the institutional mail. (*Id.*)

At the time of the defendants' response, Saunders was classified to medium/minimum security on the main compound and is allowed to schedule and attend the library to utilize its services. (D.I. 81, ex. A,¶ 7.) He had been classified to protective custody from September 23, 2008 until May 8, 2009, and during that time Saunders had full access to legal services and resources through the institutional mail process. (*Id.*) Law library logs indicate that during that time period he used the institutional mail approximately eighty times to request and receive legal information from the law library. (*Id.* at ex. A-1.)

At present, Hubbard has been housed in protective custody since February 13, 2008, and has access to legal services and resources through the institutional mail process. (*Id.* at ex. A, ¶ 8.) Law library logs indicate that during this time he used the institutional mail over thirty times to request and receive legal information from the law library. (*Id.* at ex. A-1.)

Persons convicted of serious crimes and confined to penal institutions retain the right of meaningful access to the courts. *Bounds v. Smith,* 430 U.S. 817 (1977). This access "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828. This right "must be exercised with due regard for the 'inordinately difficult

-7-

undertaking' that is modern prison administration." *Thornburgh v. Abbott,* 490 U.S. 401, 407 (1989) (quoting *Turner v. Safley,* 482 U.S. 78, 85 (1987). Thus, courts have been called upon to review the balance struck by prison officials between the penal institution's need to maintain security within its walls and the rights of prisoners. *Howard v. Snyder,* 389 F. Supp. 2d 589, 593 (D. Del. 2005).

All that is required is that Saunders and Hubbard at least have access to a prison paralegal or paging system by which to obtain legal materials. *Abdul-Akbar v. Watson,* 4 F.3d 195, 203 (3d Cir. 1993) (holding that segregated prisoners who do not have access to an institution's main law library must have some means by which documents and materials can be identified by and furnished to them in a timely fashion). Engrem's affidavit indicates that Saunders and Hubbard are not being deprived of access to the law library. Rather, their access is limited. Accordingly, considering the facts adduced and the appropriate legal standard, the court finds that Saunders and Hubbard have failed to meet the first prong necessary for injunctive relief and have not demonstrated the likelihood of success on the merits. Accordingly, their motion is **denied.** (D.I.79.)

## VI. Motion for an Extension of Time

Saunders moves for a sixty-day extension of time to respond to the defendants motion for summary judgment, until October 2009, to file the response. (D.I. 86.) The defendants filed their motion for summary judgment on August 10, 2009. (*See* D.I. 84.) The plaintiff are granted thirty (30) days from the date of this order to file a response to the defendants' motion for summary judgment. The defendants may file a reply brief within fourteen days after the plaintiffs file their response. **There will be no further extensions**.

## VII. Motion to Voluntarily Dismiss

The plaintiff, Mel McCallister ("McCallister"), filed a motion to voluntarily withdraw which the Court construes a motion to voluntarily dismiss pursuant to Fed. R. Civ. P. 41(a). (D.I. 87.) The motion is **granted**, McCallister's claims are dismissed without prejudice, and he is **dismissed** as a plaintiff.

CHIEF, UNITED STATES DISTRICT JUDGE