IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ABDULLAH G. HUBBARD, ROBERT SAUNDERS, NORMAN INGRAM, JAMES WILSON, DAVID T. SCOTT, MICHAEL BARTLEY, DAMON GIBSON, and BRYON WARNER,<br><br>      Plaintiffs,<br><br>    v.<br><br>COMMISSIONER CARL DANBERG, et al.,<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civ. Action No. 07-745-GMS<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM**

**I. INTRODUCTION**

The plaintiffs, all inmates housed at the James T. Vaughn Correctional Center ("VCC"), Smyrna, Delaware, filed this civil rights action on November 20, 2007, pursuant to 42 U.S.C. § 1983.[1] (D.I. 1, 15.) They appear *pro se* and have paid the filing fee. The amended complaint alleges racial discrimination among prison groups and in job assignments at the VCC; unconstitutional conditions of confinement for disabled inmates; improper inmate commissary account procedures; inadequate grievance procedures; and violations of the Americans with Disabilities Act. The plaintiffs seek class action status and injunctive relief. The court has jurisdiction pursuant to 28 U.S.C. § 1331. Now before the court is the defendants' motion for

---

[1] "To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

summary judgment. (D.I. 84.) The plaintiffs did not respond to the motion, despite a December 22, 2009 order granting them an extension of time to file their response. (*See* D.I. 88.) Instead, the plaintiff Robert Saunders a/k/a Shamsidin Ali ("Saunders") filed his third request for counsel.[2] (D.I. 89.)

## II. BACKGROUND

The following facts are taken from the amended complaint and other documents and exhibits submitted by the parties. The plaintiffs allege violations of the First, Eighth and Fourteenth Amendments to the United States Constitution. The plaintiffs Abdullah G. Hubbard ("Hubbard"), Saunders, Norman Ingram ("Ingram"), James Wilson ("Wilson"), David T. Scott ("Scott"), Michael Bartley ("Bartley"), Damon Gibson ("Gibson"), and Bryon Warner ("Warner") (collectively "the plaintiffs") allege that prison officials at the VCC discriminate on the bases of race and disability, that disabled inmates must wait outside in the rain, and that housing conditions are hot and poorly ventilated.[3] (D.I. 1, 15.) More particularly, the plaintiffs allege that: (1) when the weather is cold, disabled inmates become ill from having to wait outside for the prison gates to open; (2) NAACP Chapter 2032 ("Chapter 2032") was prohibited from having outside support and later shut down, another committee was allowed the use of computers, but Chapter 2032 was not, and Chapter 2032 is supervised but other groups are not; and (3) African Americans are denied equal protection in employment and prison procedures. (D.I. 15, ¶¶ 24-26.) The prayer for relief seeks an order pursuant to Fed. R. Civ. P. 23 that the

---

[2]Saunders' previous requests for counsel were denied on October 9, 2008, and December 22, 2009. (*See* D.I. 16, 33, 74, 88.)

[3]The plaintiff Mel McCallister voluntarily dismissed his claims. (*See* D.I. 87, 88.)

action be maintained as a class action and that counsel be appointed but, to date, the plaintiffs have not filed a formal motion for class certification. (D.I. 15, prayer for relief ¶ 1.) The court docket indicates that Hubbard, Bartley, Wilson, and Ingram responded to discovery, but their responses are sparse.[4] (D.I. 85, ex. A.) Saunders has filed numerous motions but, other than signing the amended complaint, Scott, Gibson, and Warner have not participated in the lawsuit.

Saunders is the chairman of the Legal Redress Committee of Chapter 2032. (D.I. 85, ex. E.) He filed a grievance on October 5, 2007, complaining that Chapter 2032 was a victim of racial discrimination. (D.I. 85, ex. D ¶ 4; ex. E.) The matter was investigated, relief denied, and Saunders appealed. (D.I. 85, ex. E.) The decision was upheld. (*Id.*) A search of prison records did not produce any other grievances or complaints submitted by the plaintiffs against any defendant relevant to the issues alleged in the complaint. (D.I. 85, ex. D.)

The defendant Ron Hosterman ("Hosterman")[5] has been employed with the Delaware Department of Correction ("DOC") since 1971 and works at the VCC. (D.I. 85, ex. B ¶ 1.) His duties include directing the institutional operation of approved prison programs. (*Id.* at ¶ 2.) Chapter 2032 and another group, the Social Concern Committee[6] held their meetings in the computer classroom. (*Id.* at ¶ 5.) However, the groups were moved from the computer classroom so that more computer education courses could be held. (*Id.*) The move resulted in

---

[4]With regard to harm that occurred to the plaintiffs as a result of their allegations, Bartley describes his as "emotional distress," Wilson and Ingram refer to the medical department, and Hubbard states he cannot respond in light of his housing status. (D.I. 85, ex. A.)

[5]Improperly named by the plaintiffs as Ron Holsterman.

[6]According to the plaintiffs, a Catholic inmate organization. (D.I. 15, ¶ 25.)

both groups losing use of the computers and electric typewriters. (*Id.*) The typewriters are no longer available to any groups because they became too old to repair. *Id.*

Prison programs are permitted to have outside support group member participation so long as the outside members pass background clearances. (*Id.* at ¶ 6.) With the exception of an annual recognition ceremony or graduation, family and friends are not permitted to attend prison programs because their participation gives program participants an advantage in visits over non-group members. (*Id.*) All programs must be supervised by an advisor, counselor, or regular volunteer. (*Id.* at ¶ 7.) If programs have regular volunteers, the volunteers are permitted to run the programs for the prisoners provided they are cleared by the institution. (*Id.*) Chapter 2032 does not have regular volunteers to run their program and thus they are supervised by an advisor or counselor. (*Id.*) Chapter 2032 was not shut down and continues to operate. (*Id.* at ¶ 5.)

The VCC is a campus style institution and individuals who leave the housing units must walk outside to access other areas at the prison. (D.I. 85, ex. B ¶ 3.) All inmates and prison staff, regardless of race or disability, must travel outside between buildings. (*Id.* at ¶ 4.) Because the gates open one at a time, when various groups of inmates are separated, there may be delays. (*Id.*) Prison staff and visitors must also wait. (*Id.*)

The defendant Thomas Carroll ("Carroll"), is the former warden at the VCC. According to Carroll, race does not play a factor in the determination of job placement, classification, discipline, or other decisions made by prison staff. (D.I. 85, ex. C ¶ 3.) Employment, programming, education, disciplinary decisions and other prison functions are subject to a multi-level process and review within the institution. (*Id.* at ¶ 3.) The VCC does not keep a record of the race of inmates hired for prison jobs because race is not a factor in employment decisions

made at the VCC. (*Id.* at ¶ 3.) Employment decisions are based upon availability, the interview, classification status, and eligibility. (*Id.* at ¶ 4.) The goal is to engage as many inmates as possible in work or employment regardless of race. (*Id.* at ¶ 4.) There are more inmates than available jobs. (*Id.* at ¶ 4.)

### III. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). The facts must be viewed in the light most favorable to the non-moving party and all reasonable inferences from the evidence must be drawn in that parties' favor. *Conopco, Inc. v. United States*, 572 F.3d 162, 165 (3d Cir. 2009). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Industrial Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

The defendants move for summary judgment on the grounds that Hubbard, Saunders, Warner, Gibson, Scott, Wilson, Bartley, and Ingram failed to exhaust their respective administrative remedies; the plaintiffs failed to establish the defendants' personal involvement

necessary to impose liability under 42 U.S.C. § 1983; the plaintiffs failed to produce any evidence of a denial of their right to due process; the plaintiffs have not established they suffered a physical injury; and the defendants are entitled to qualified immunity. (D.I. 85.) The plaintiffs did not file a response to the motion. The court, however, will not grant the entry of summary judgment without considering the merits of the defendants' unopposed motion. *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991) (holding that a district court should not have granted summary judgment solely on the basis that a motion for summary judgment was not opposed.").

## IV. DISCUSSION

### A. Request for Counsel

Saunders requests counsel pursuant to 28 U.S.C. § 1915(e)(1) on the grounds that he has an eye condition that does not allow him to read or write for longer than one-half an hour; he is unable to secure discovery relevant to issues germane to this litigation; he has made repeated efforts to obtain counsel; a trial will likely involve conflicting testimony; and the plaintiffs are all members of Chapter 2032 and should be permitted to meet jointly to present their arguments, briefs, and consolidated motions. (D.I. 89.)

Although a plaintiff does not have a constitutional or statutory right to an attorney,[7] a district court may seek legal representation by counsel for a plaintiff who demonstrates "special circumstances indicating the likelihood of substantial prejudice to [the plaintiff] resulting . . .

---

[7]*See Mallard v. United States Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989) (§ 1915(d) does not authorize a federal court to require an unwilling attorney to represent an indigent civil litigant, the operative word in the statute being "request."; *Tabron v. Grace*, 6 F.3d at 153 (no right to counsel in a civil suit).

from [the plaintiff's] probable inability without such assistance to present the facts and legal issues to the court in a complex but arguably meritorious case." *Tabron v. Grace*, 6 F.3d 147, 154 (3d Cir. 1993)(citing *Smith-Bey v. Petsock*, 741 F.2d 22, 26 (3d Cir. 1984)). Factors to be considered by a court in deciding whether to request a lawyer to represent an indigent plaintiff include: (1) the merits of the plaintiff's claim; (2) the plaintiff's ability to present his or her case considering his or her education, literacy, experience, and the restraints placed upon him or her by incarceration; (3) the complexity of the legal issues; (4) the degree to which factual investigation is required and the plaintiff's ability to pursue such investigation; (5) the plaintiff's capacity to retain counsel on his or her own behalf; and (5) the degree to which the case turns on credibility determinations or expert testimony. *Montgomery v. Pinchak*, 294 F.3d 492, 498-99 (3d Cir. 2002); *Tabron*, 6 F.3d at 155-56.

The court concludes that requesting an attorney to represent Saunders is not warranted. Initially, the court notes that this is Saunders' third request for counsel, the prior two motions having been denied. (D.I. 33, 88.) Of import is that the case is not arguably meritorious as will be discussed below. Moreover, many of the reasons Saunders relies upon do not support his request for an attorney. For example, Saunders did not request *in forma pauperis* status pursuant to § 1915 and, therefore, the statute is inapplicable to his motion. Because the discovery deadline expired on June 10, 2009, discovery issues are moot, eliminating the need for an attorney to assist Saunders. (D.I. 65.) The court previously ruled on the issue of permitting the incarcerated plaintiffs to meet, denying the request on December 18, 2009. (D.I. 88.) Also, Saunders' filings in this case demonstrate his ability to articulate his claims and represent himself. Finally, there

are other named plaintiffs who may also file pleadings in this case. For these reasons, the court will deny Saunders' third request for counsel. (D.I. 89.)

### B. Class Certification

The prayer for relief asks that this case be maintained as a class action. The plaintiffs have not addressed the issue and have never filed a motion for class certification. Nonetheless, the issue of class certification has a direct bearing on the issue of exhaustion of administrative remedies. Therefore, the court will address the issue.

Rule 23(a) of the Federal Rules of Civil Procedure provides that members of a class may only sue on behalf of a class if: (1) the class is so numerous that joinder is impractical; (2) there are common questions of law or fact; (3) the claims of the representative parties are typical of the class; and (4) "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). A class may only be certified if all four elements of Rule 23(a) are met. *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 n.6 (3d Cir. 2008).

"Numerosity requires a finding that the putative class is so numerous that joinder of all members is impracticable." *See Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 168. 182 (2001); Fed. R. Civ. P. 23(a)(1). "No single magic number exists satisfying the numerosity requirement," but the United States Court of Appeals for the Third Circuit ("Third Circuit") generally has approved classes of forty or more. *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001); *Moskowitz v. Lopp*, 128 F.R.D. 624, 628 (E.D. Pa. 1989). The amended complaint makes no reference to the number of putative class members. Instead, it focuses on the original nine plaintiffs. The plaintiffs' class of nine fails to satisfy the numerosity requirement.

With regard to typicality and commonality, Rule 23 does not require that the representative plaintiffs have endured precisely the same injuries that have been sustained by the class members, only that the harm complained of be common to the class, and that the named plaintiffs demonstrate a personal interest or "threat of injury . . . [that] is 'real and immediate,' not 'conjectural' or 'hypothetical.'" *Hassine v. Jeffes*, 846 F.2d 169, 177 (3d Cir. 1988) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)). It appears that the named plaintiffs share at least one claim and utilize the same theory.

As to the fourth prong, the court notes that the plaintiffs are all incarcerated individuals and they appear *pro se*. "[P]ro se litigants are generally not appropriate as class representatives." *Hagan v. Rogers*, 570 F.3d 146, 159 (3d Cir. 2009) (citing *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) ("it is plain error to permit [an] imprisoned litigant who is unassisted by counsel to represent his fellow inmates in a class action")). Also, only Saunders has requested counsel and, in all instances, the court has denied his request. Moreover, Saunders paid the filing fee and is the one plaintiff who consistently files pleadings in this matter. Hence, it appears that he seeks to represent both named and unnamed plaintiffs in this action. It is clear from Saunders' filings that he has the ability to proceed with this case. He may not, however, represent the other plaintiffs or proceed as the class representative. The court has thrice denied Saunders' request for counsel, and therefore, finds denial of class certification is appropriate. *See Hagan*, 570 F.3d at 159 (noting that it was inappropriate for the district court to deny class certification on the basis of inadequate representation without first deciding the plaintiff's motion to appoint counsel as the district court had deferred any consideration of the plaintiff's motion to appoint counsel).

For the above reasons, the court finds that the requirements of Fed. R. Civ. Rule 23 have not been and, therefore, denies class certification.

**C. Administrative Remedies**

The State defendants argue that, because Hubbard, Warner, Gibson, Scott, Wilson, McCallister, Bartley, and Ingram did not exhaust their administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), their claims fail as a matter of law.[8] Similarly, they contend that because Saunders only exhausted the Chapter 2032 claim, his other claims also fail as a matter of law.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). The defendants have the burden of pleading and proving failure to exhaust administrative remedies as an affirmative defense in a § 1983 action. *Ray v. Kertes*, 285 F.3d 287, 295-96 (3d Cir. 2002).

Under § 1997e(a), "an inmate must exhaust [administrative remedies] irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). Exhaustion means proper exhaustion, that is, "a prisoner must complete the

---

[8]The court will not address the issue as to McCallister since he has voluntarily dismissed his claims. (D. I. 88.)

administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). One inmate, however, may not rely upon grievances filed by another inmate to excuse his own failure to file grievances. *Abney v. McGinnis*, 380 F.3d 663, 669 (2d Cir. 2004); *see Shariff v. Coombe*, 655 F. Supp. 2d 274, 287 (S.D.N.Y. 2009).

"'[P]rison grievance procedures supply the yardstick' for determining what steps are required for exhaustion." *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007) (quoting *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004)). A prisoner must complete the administrative review process in accordance with the applicable procedural rules in order to satisfy the exhaustion requirement of the PLRA. *Nickens v. Department of Corr.*, 277 F. App'x 148, 152 (3d Cir. 2008) (not published) (citing *Williams*, 482 F.3d at 639; *Spruill*, 372 F.3d at 228, 231). Perfect overlap between the grievance and a amended complaint is not required by the PLRA as long as there is a shared factual basis between the two. *Jackson v. Ivans*, 244 F. App'x 508, 513 (3d Cir. 2007) (not published) (citing *Woodford*, 548 U.S. at 95 ("The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance."). A futility exception to the PLRA's mandatory exhaustion requirement is completely precluded. *Banks v. Roberts*, 251 F. App'x 774, 776 (3d Cir. 2007) (not published) (citing *Nyhuis v. Reno*, 204 F.3d 65, 71 (3d Cir. 2000). The exhaustion requirement is absolute, absent circumstances where no administrative remedy is available. *See Spruill*, 372 F.3d at 227-28; *Nyhuis*, 204 F.3d at 67; *but see Freeman v. Snyder*, Civ. No. 98-636-GMS, 2001 WL 515258, at *7 (D. Del. Apr. 10, 2001) (finding that if no administrative remedy is available, the exhaustion requirement need not be met). A grievance procedure is not available, even if one

exists on paper, if the defendant prison officials somehow prevent a prisoner from using it. *Mitchell v. Horn*, 318 F.3d 523 (3d Cir. 2003). If prison authorities thwart the inmate's efforts to pursue the grievance, administrative remedies may be presumed exhausted, as no further remedies are "available" to him. *Brown v. Croak*, 312 F.3d 109, 112-13 (3d Cir. 2002).

DOC administrative procedures provide for a multi-tiered grievance and appeal process. DOC Policy 4.4 (revised May 15, 1998). (D.I. 85, ex. F.) First, the prisoner must file a grievance within seven days with the Inmate Grievance Chair, for an attempt at informal resolution; second, if unresolved, the grievance is forwarded to the Grievance Resolution Committee for a determination, which is forwarded in turn to the Warden; and third, the Bureau Grievance Officer conducts the final level of review. *Id.*

The defendants conducted an exhaustive search and found no records to suggest that Hubbard, Warner, Gibson, Scott, Wilson, Bartley, and Ingram made any attempt to exhaust their administrative remedies. Similarly, the defendants' search found that Saunders submitted a grievance and exhausted his administrative remedies with regard to the claim alleging discrimination against Chapter 2032, but submitted no other grievances. Saunders' exhaustion of the Chapter 2032 discrimination issue does not, however, extend to the other plaintiffs.[9]

The defendants have demonstrated that Hubbard, Warner, Gibson, Scott, Wilson, Bartley, and Ingram failed to exhaust any of the claims raised in the amended complaint. The

---

[9]While not addressed by the Third Circuit, "vicarious exhaustion" has been permitted in § 1983 class actions filed by inmates. *See Chandler v. Crosby*, 379 F.3d 1278 (11th Cir. 2004); *Meisberger v. Donahue*, 245 F.R.D. 627 (S.D. Ind. 2007) (allowing vicarious exhaustion in a class action), *cf. McGoldrick v. Werholtz*, 185 F. App'x 741 (10th Cir. 2006) (not published) ("vicarious exhaustion" rejected where a class had not been certified, on the grounds that a *pro se* plaintiff cannot in any manner represent another for any purpose). As previously discussed, this case will not proceed as a class action. *See* ¶ IV.B.

defendants further demonstrated that Saunders exhausted the Chapter 2032 discrimination claim, but failed to exhaust the other claims raised in the amended complaint. The plaintiffs' failure to properly exhaust the issues raised in their amended complaint issue is fatal to their claims. "[I]t is beyond the power of this court . . . to excuse compliance with the exhaustion requirement." *Nyhuis*, 204 F.3d at 73. For the above reasons, the court will grant the defendants' motion for summary judgment as to the issue of exhaustion of administrative remedies. The only claim that the court will address on the merits is Saunders' Chapter 2032 discrimination claim.[10]

### D. Equal Protection

The defendants contend that the plaintiffs failed to establish their personal involvement in any alleged constitutional violation and that the plaintiffs have not been deprived of their right to equal protection. As noted, the plaintiffs did not file a response to the defendants' motion.

In order to satisfy the personal involvement requirement for a § 1983 claim, the amended complaint need only allege the conduct, time, place, and person responsible. *See Evancho v. Fisher*, 423 F.3d 347, 353-54 (3d Cir. 2005)(citing *Boykins v. Ambridge Area Sch. Dist.*, 621

---

[10]To the extent the plaintiffs allege discrimination on the basis of a disability pursuant to § 1983 or under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*, their claims fail. There is nothing in the record to indicate that any of the named plaintiffs are disabled. With regard to the conditions of confinement claim, the court notes that the record does not establish a denial of the minimal civilized measure of life's necessities or deliberate indifference by the defendants. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1982); *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). With regard to the employment discrimination claim, the record does not indicate when the plaintiffs applied for the positions, the type of positions for which they applied, or the qualifications or race of the applicant versus the person who received the position. Nor did the plaintiffs contravene the defendants' evidence that employment decisions are based upon availability, the interview, classification status, and eligibility of an inmate and not race. To the extent the plaintiffs base their claims upon dissatisfaction with the grievance procedure or denial of grievances, the claim fails because inmates do not have a constitutionally protected right to a grievance procedure. *Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (not published) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)).

F.2d 75, 80 (3d Cir. 1980)); *see also Solan v. Ranck*, 326 F. App'x 97, 101 (3d Cir. 2009) (not published). It is well established, however, that supervisory liability cannot be imposed under § 1983 on a respondeat superior theory.[11] *See Ashcroft v. Iqbal*, – U.S. –, 129 S.Ct. 1937 (2009); *Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). "'A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior.'" *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Purpose rather than knowledge is required to impose liability on an official charged with violations arising from his or her superintendent responsibilities.[12] *Iqbal*, 129 S.Ct. at 1949. "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.*

To prevail on a claim alleging a violation of the Equal Protection Clause, a prisoner must demonstrate that he was treated differently from similarly situated inmates. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990); *Saunders v. Horn*, 959 F. Supp. 689, 696 (E.D.Pa.1996); *see also City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)

---

[11]In *Iqbal*, the plaintiff alleged supervisory officials violated his rights because one official was the "principal architect" of the policy, and another was "implemental" in adoption and execution of the policy. *See id.* at 1944. The Supreme Court found the allegations facially insufficient. *See Iqbal*, 129 S.Ct. at 1949 (quoting *Robertson v. Sichel*, 127 U.S. 507, 515-516 (1888), for the proposition that "[a] public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties").

[12]In light of *Iqbal*, it is uncertain whether proof of personal knowledge, with nothing more, provides a sufficient basis to impose liability upon a supervisory official. See *Bayer v. Monroe County Children and Youth Services*, 577 F.3d 186, 190 n.5 (3d Cir. 2009)

(noting that the Equal Protection clause "is essentially a direction that all persons similarly situated should be treated alike"); *Price v. Cohen,* 715 F.2d 87, 91 (3d Cir. 1983) ("To establish a violation of the Equal Protection Clause, a plaintiff must show that [an] allegedly offensive categorization invidiously discriminates against [a] disfavored group."). In the absence of a fundamental right or a protected class, equal protection only requires that a regulation which results in the unequal treatment of an inmate bears some rational relationship to a legitimate penological interest. *See McGinnis v. Royster,* 410 U.S. 263 (1973); *Hodges v. Klein,* 562 F.2d 276 (3d Cir. 1977).

The amended complaint alleges that when Commissioner Carl Danberg ("Danberg"), Carroll, Betty Burris ("Burris"),[13] Hosterman, Michael Trader ("Trader"), and Michael McCramer ("McCramer") learned that Chapter 2032 had raised concerns regarding overall racism at the VCC, its office at the prison was abruptly closed after having been open for nine years; that Hosterman informed chapter members they would no longer have access to typewriters, computers, or printers; and that Carroll and Hosterman would only permit chapter support group meetings upon the availability of security staff. (D.I. 15, ¶¶ 15-26.)

The record reflects that Saunders is a member of Chapter 2032. Contrary to the allegations in the amended complaint, the undisputed facts are that Chapter 2032 continues to operate and is permitted to have outside support participation at meetings provided support individuals pass a background clearance. As explained by the defendants, and not refuted by the plaintiffs, unless there is an annual recognition ceremony or graduation, family and friends are not permitted to attend any prison programs because their attendance would give program

---

[13]Burris was dismissed as a defendant on December 22, 2009. (D.I. 88.)

participants an advantage in visits. Also, the facts are that Chapter 2032 was treated no differently than other programs when its use of computers and typewriters was discontinued. The defendants explained that the use was discontinued because the program groups were moved from the computer classroom so that more computer classes could be held. Finally, as explained by the defendants and not refuted by the plaintiffs, Chapter 2032 is supervised by an advisor or counselor because it does not have regular volunteers to run its program. The record does not support the claim that Chapter 2032 was discriminated against on the basis of race in violation of the plaintiffs' right to equal protection. Without any evidence of unequal treatment due to race, the claim of unequal treatment cannot survive.[14] Nor could a reasonable jury find that the defendants were personally involved, personally directed or knew of and acquiesced in any constitutional violation. Therefore, the court will grant the defendants' motion for summary judgment.

## V. CONCLUSION

For the above reasons the court will grant the defendants' motion for summary judgment and will deny Saunders request for counsel. (D.I. 84, 89.)

An appropriate order will be entered.

_March 10_, 2010
Wilmington, Delaware

CHIEF, UNITED STATES DISTRICT JUDGE

---

[14]Because the court finds that the plaintiffs' constitutional rights were not violated, it will not address the issue of qualified immunity.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ABDULLAH G. HUBBARD, ROBERT SAUNDERS, NORMAN INGRAM, JAMES WILSON, DAVID T. SCOTT, MICHAEL BARTLEY, DAMON GIBSON, and BRYON WARNER, | ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civ. Action No. 07-745-GMS ) |
| COMMISSIONER CARL DANBERG, et al., | ) ) ) |
| Defendants. | ) |

**ORDER**

At Wilmington this 10th day of March, 2010, for the reasons set forth in the Memorandum issued this date;

1. The defendants' motion for summary judgment is **granted**. (D.I. 84.)

2. The motion for appointment of counsel filed by Robert Saunders a/k/a Shamsidin Ali is **denied**. (D.I. 89.)

3. The Clerk of Court is directed to enter judgment in favor of the defendants and against the plaintiffs.

_____
CHIEF UNITED STATES DISTRICT JUDGE